In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-1708

VINCENT PETERS,
professionally known as VINCE P,

*Plaintiff-Appellant,*

*v.*

KANYE WEST, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 C 3951—**Virginia M. Kendall**, *Judge.*

ARGUED MARCH 26, 2012—DECIDED AUGUST 20, 2012

Before EASTERBROOK, *Chief Judge*, and BAUER and WOOD, *Circuit Judges*.

WOOD, *Circuit Judge.* In 2006, Vincent Peters, whose stage name is Vince P, wrote, recorded, and distributed a song entitled *Stronger*. The song's title comes from a key line in its "hook" (refrain or chorus). The line in turn draws from an aphorism coined by Friedrich Nietzsche: "what does not kill me, makes me stronger."

Vince P believes that he had an opportunity to "make it" in the hip-hop recording industry—he needed only to find an executive producer. His search led him to John Monopoly, a business manager and close friend of Kanye West, one of hip-hop's superstars. Vince P sent Monopoly a disc containing a recording of *Stronger*, and even secured a meeting with Monopoly, during which Vince P played his recording of *Stronger* for Monopoly. Monopoly was apparently impressed and agreed to be Vince P's producer, so long as Vince P was funded by a record label. That funding never materialized, unfortunately, and so the proposed collaboration foundered.

Shortly thereafter, Kanye West released a song entitled *Stronger*. West's song also features a hook that repeats the Nietzschean maxim. Worse, according to Vince P, West's song contains several other suspicious similarities to his song. Vince P tried to contact West, but he was turned away by West's representatives. In response, Vince P registered his copyright in his version of *Stronger* with the U.S. Copyright Office and filed suit against West. The district court dismissed the complaint for failure to state a claim upon which relief can be granted. We agree with the district court that the two songs are not similar enough to support a finding that copyright infringement has occurred, and we thus affirm.

**I**

Vince P describes himself in the complaint as an up-and-coming hip-hop artist and songwriter. In 2006,

as he was beginning his career in music, he wrote and recorded a song entitled *Stronger,* which is about the competitive—indeed cutthroat—nature of the hip-hop and rap world. For clarity, we refer to this as *Stronger (VP).* Vince P's music apparently captured the attention of someone at Interscope Records; that person told him that the company would devote "substantial resources" to producing Vince P's inaugural album, but only if he could procure the services of a good executive producer.

His search led him to John Monopoly, a well-known producer and—importantly for our purposes—a close friend and business manager to Kanye West. Vince P sent several of his songs to Monopoly, who liked what he heard enough to schedule a meeting. On November 12, 2006, Vince P and Monopoly met at the latter's home in Chicago, where Vince P played several of his recordings, including *Stronger (VP).* At the conclusion of their meeting, Vince P left a CD of some of his songs—including *Stronger (VP)*—with Monopoly. Eventually, Monopoly agreed to be Vince P's executive producer, so long as Interscope Records was willing to fund the recording project. That funding, however, fell through, and so the project stalled.

In July 2007, less than a year after the November 2006 meeting between Vince P and Monopoly, West released his own single titled *Stronger.* (We call this *Stronger (KW).*) It was a huge hit. The song earned the #1 spot in several Billboard charts, the single sold over three million copies, and it eventually earned West a Grammy

for Best Rap Solo Performance. Vince P, however, was not among its fans. He noticed what he thought were several infringing similarities between his 2006 song and West's more recent release. Vince P also saw that Monopoly was listed as a manager on the notes to West's album GRADUATION, on which *Stronger (KW)* appears. Vince P attempted to contact West, but he was rebuffed by West's representatives, and so he turned to the federal courts. After formally registering his copyright in *Stronger (VP)* with the U.S. Copyright Office, see 17 U.S.C. § 411(a), *Reed-Elsevier v. Muchnick*, 130 S. Ct. 1237, 1241 (2010) (copyright registration, while not jurisdictional, is a substantive requirement of infringement litigation), Vince P sued West in the U.S. District Court for the Northern District of Illinois. That court dismissed Vince P's complaint under Federal Rule of Civil Procedure 12(b)(6), and he now appeals.

## II

We review the district court's order granting West's motion to dismiss *de novo*. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). We "construe the complaint in the light most favorable to the plaintiff," and we therefore draw all plausible inferences in Vince P's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). As a practical matter for the present case, this means that we assume as true all of Vince P's allegations regarding Monopoly's early access to Vince P's song and his claims about the close relationship between Monopoly

and Kanye West. We review *de novo* the district court's determinations regarding the similarity between the two songs as well as its ultimate conclusion of noninfringement. *Intervest Constr. Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914, 919-20 (11th Cir. 2008).

Vince P's complaint contains only one claim: his allegation that *Stronger (KW)* infringes his valid copyright in *Stronger (VP)*. Proving infringement of a copyright owner's exclusive right under 17 U.S.C. § 106(1) (the reproduction right) requires proof of "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007).

A

Copyright "registration made before or within five years after the first publication of the work shall constitute prima facie evidence of the validity of the copyright." 17 U.S.C. § 410(c). Vince P applied for copyright registration in *Stronger (VP)* on March 28, 2010, which is well within the statutory five-year window beginning in 2006. West appropriately does not challenge Vince P's copyright registration, nor does he otherwise question the validity of Vince P's copyright ownership in *Stronger (VP)*. Vince P has thus made a *prima facie* showing of his ownership in the whole of the lyrics to his song.

Nevertheless, whether the parts of that song that West allegedly copied are, on their own, entitled to copyright

protection is a separate question. If the copied parts are not, on their own, protectable expression, then there can be no claim for infringement of the reproduction right. See *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 61 (2d Cir. 2010).

B

Satisfied that Vince P has shown valid copyright ownership, we turn our attention to the question of copying. The standard for copying is surprisingly muddled. Where direct evidence, such as an admission of copying, is not available (as is typically the case, see *JCW*, 482 F.3d at 915), a plaintiff may prove copying by showing that the defendant had the opportunity to copy the original (often called "access") and that the two works are "substantially similar," thus permitting an inference that the defendant actually did copy the original. The various efforts to define these two key concepts, however, have unfortunately had the unintended effect of obscuring rather than clarifying the issues. This court has said that substantial similarity can be shown by evidence of "actual copying" and "improper appropriation." *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005). Thus, we permit copying to be proven by evidence of access, actual copying, and improper appropriation. Vince P argues that we should adopt a hybrid of our own approach and the one that he argues prevails in the Second Circuit. That court, he contends, permits actual copying to be proven by "access" and "probative similarity" (which is distinct from substantial similarity).

Appellant's Br. at 26 (citing *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 140 (2d Cir. 1992)). Putting these tests together, he seems to want us to require proof of access, improper appropriation, and actual copying by means of showing probative similarity and access (again).

Other circuits have also had trouble expressing the test with any clarity. The First Circuit, for example, finds copying where the plaintiff has shown substantial similarity, access, and probative similarity. *T-Peg, Inc. v. Vermont Timber Works, Inc.*, 459 F.3d 97, 111-12 (1st Cir. 2006). The formulation found in the Second Circuit requires proof of improper appropriation and actual copying; the latter is shown by proving access and probative similarity. *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003); *Laureyssens*, 964 F.2d at 140. The Eleventh Circuit takes still a different approach, requiring either "striking similarity" or access and merely probative similarity. *Peter Letterese & Assocs. v. World Institute of Scientology Enterprises*, 533 F.3d 1287, 1300-01 (11th Cir. 2008); see also *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1178-79 (10th Cir. 2009) (applying same test). See also *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 435 (4th Cir. 2010) (access, intrinsic similarity, and extrinsic similarity); *Frye v. YMCA Camp Kitaki*, 617 F.3d 1005, 1008 (8th Cir. 2010) (same); *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007) (factual copying and substantial similarity, where factual copying is shown either by striking similarity, or access and probative similarity); *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 274 (6th Cir. 2009) (access and substantial similarity, or "a high degree of

similarity"); *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207-08 (3d Cir. 2005) (access, copying, and improper appropriation).

Despite all of this confusing nomenclature, this strikes us as a "pseudo-conflict": despite the conflicting and confusing verbiage, the outcomes do not appear to differ. *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322-23 (7th Cir. 2012); see also *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958, 960-62 (7th Cir. 2010) (describing a pseudo-conflict in trademark law). Fundamentally, proving the basic tort of infringement simply requires the plaintiff to show that the defendant had an actual opportunity to copy the original (this is because independent creation is a defense to copyright infringement), and that the two works share enough unique features to give rise to a breach of the duty not to copy another's work. Our analysis will follow this structure.

i

We begin with the question of opportunity. We already know (for purposes of this Rule 12(b)(6) inquiry) that Monopoly had access to Vince P's song and that Monopoly has a close relationship with West. These allegations are more than enough to support an inference that West had an opportunity to copy *Stronger (VP)*. Not only did Monopoly actually hear Vince P's song: he also twice received copies of it, once before their November 2006 meeting and again on a CD during that meeting. Furthermore, Monopoly is credited with

acting as West's manager on the GRADUATION album. This evidence of close collaboration between West and Monopoly suggests that Monopoly may have passed Vince P's song on to West during the production of the album, and that West could have used that song in crafting his own hit single. Viewed together, these allegations, taken as true, suggest that Monopoly and West had ample access to *Stronger (VP)*, and that this access gave West an opportunity to copy the song.

ii

But even assuming that West had the opportunity to copy the lyrics to *Stronger (VP)*, the question remains whether the complaint plausibly alleges that he actually did so. Before we can answer this question, we must confront the differences among the circuits about the relation between proof of access and evidence of similarity. Some circuits follow an "inverse ratio" rule, under which the strength of proof of similarity varies inversely with the proof of access (*i.e.*, strong proof of access allows for only weak proof of similarity, and vice versa). *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000); see also *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620 (9th Cir. 2010); *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004); *Amini Innovation Corp. v. Anthony California, Inc.*, 439 F.3d 1365, 1368-69 (Fed. Cir. 2006) (applying Ninth Circuit law). Other courts have rejected the inverse-ratio rule. After following that rule for several decades, the Second Circuit expressly rejected it in 1961, concluding that the rule "confuses

more than it clarifies." *Arc Music Corp. v. Lee*, 296 F.2d 186 (2d Cir. 1961).

This court's rule has not been so explicit, although we have occasionally endorsed something that comes close to this inverse approach. In *Selle v. Gibb*, 741 F.2d 896, 903 n.4 (7th Cir. 1984), we held that "degree of similarity required to establish an inference of access [should be] in an inverse ratio to the quantum of direct evidence adduced to establish access." More recently, we noted that "similarity that is so close as to be highly unlikely to have been an accident of independent creation is evidence of access." *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1170 (7th Cir. 1997) (emphasis in original); but see *id*. (noting that such similarity cannot be evidence of access when both are copies of something in the public domain). See also Alex Kozinski, *How I Narrowly Escaped Insanity*, 48 UCLA L. REV. 1293, 1302 (2001) (describing personal experience of very close similarity between a popular movie and a novel he was writing, but then noting that the movie producers could not have seen his uncompleted manuscript). Thus, in both *Selle* and *GMA Accessories*, we noted that evidence that two works are very similar can suggest that the alleged infringer had access to the original.

Notably, however, we have never endorsed the other side of the inverse relation: the idea that a "high degree of access" justifies a "lower standard of proof" for similarity. *Three Boys Music*, 212 F.3d at 485. As we explained above, evidence of access is required because independent creation is a defense to copyright infringe-

ment, and so a plaintiff must show that the defendant had an opportunity to copy her original work. This issue is independent of the question whether an alleged infringer breached his duty not to copy another's work. See *GMA Accessories*, 132 F.3d at 1170. Once a plaintiff establishes that a defendant could have copied her work, she must separately prove—regardless of how good or restricted the opportunity was—that the allegedly infringing work is indeed a copy of her original. In this case, Vince P has adequately pleaded that West had an opportunity to copy his song, but that does not help him prove similarity. Vince P must show that West actually copied his song by pointing to similarities between the two works. We are not persuaded that the similarities alleged by Vince P rise to the level of copyright infringement.

For the benefit of readers interested in coming to their own conclusions about these two songs, we have included the full lyrics to each one in the Appendix to this opinion. For present purposes, however, we give the two "hooks," which provide the backdrop to the discussion that follows:

*Stronger (VP)* [Hook]

What don't kill me make me stronger
The more I blow up the more you wronger
You copied my CD you can feel my hunger
The wait is over couldn't wait no longer

*Stronger (KW)* [Hook]

> N-N-N-now th-th-that don't kill me
> Can only make me stronger
> I need you to hurry up now
> Cause I can't wait much longer
> I know I got to be right now
> Cause I can't get much wronger
> Man I've been waitin' all night now
> That's how long I've been on ya.

Three features in particular of *Stronger (KW)* form the basis of Vince P's argument that West's song infringes his. First, he notes that the hooks of both songs derive from the same common maxim and that they implement similar rhyme schemes (stronger, wronger, etc.). Second, he points to the songs' shared title, which again derives from Nietzsche. Finally, he notes that both songs contain "incongruous" references to the British model Kate Moss, who is not usually featured in rap or hip-hop lyrics.

Nietzsche's phrase "what does not kill me, makes me stronger" comes from TWILIGHT OF THE IDOLS (1888). Although the fact that both songs quote from a 19th century German philosopher might, at first blush, seem to be an unusual coincidence, West correctly notes that the aphorism has been repeatedly invoked in song lyrics over the past century. Notably, an even more recent popular song—one that held the top spot in the Billboard Hot 100 chart at about the same time as oral argument in this case—also shares this key feature with both West's and Vince P's songs. See Gary Trust,

*Kelly Clarkson Returns to Hot 100 Peak, The Wanted Hit Top 10*, BILLBOARD, *available at* http://www.billboard.com/#/news/kelly-clarkson-returns-to-hot-100-peak-the-1006316152.story (last visited July 13, 2012) (discussing *Stronger (What Doesn't Kill You)*, performed by Kelly Clarkson). The ubiquity of this common saying, together with its repeated use in other songs, suggests that West's title and lyric do not infringe on Vince P's song. *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 144 (2d Cir. 1998); *Selle*, 741 F.2d at 901.

Next, Vince P claims that West's song infringes on the rhyme pattern he uses in the hook. But this argument misapprehends the nature of Vince P's rights. Copyright protects actual expression, not methods of expression. 17 U.S.C. § 102(b); *Baker v. Selden*, 101 U.S. 99, 104 (1879). Just as a photographer cannot claim copyright in the use of a particular aperture and exposure setting on a given lens, no poet can claim copyright protection in the form of a sonnet or a limerick. Similarly, Vince P cannot claim copyright over a tercet. See *Steele v. Turner Broad. Sys. Inc.*, 646 F. Supp. 2d 185, 192 (D. Mass. 2009) ("A common rhyme scheme or structure does not qualify as original expression protectable under federal copyright law."). (We note for the sake of precision that, although Vince P seems to be claiming protection over a "triple rhyme," a closer examination of his lyrics reveals that he actually uses a soft quadruple monorhyme (stronger, wronger, hunger, longer). West, by contrast, uses two soft four-line schemes (stronger and longer, and wronger and "on ya.").) Nor are we persuaded that the particular rhymes of stronger, longer, and wronger qualify for

copyright protection. See *Prunte v. Universal Music Grp.*, 699 F. Supp. 2d. 15, 29 (D.D.C. 2010) (no protection for rhyming "-ill" sound).

We turn then to the songs' references to Kate Moss, a well-known supermodel. In Vince P's song, the line is "Trying to get a model chick like Kate Moss"; in West's it is "You could be my black Kate Moss tonight." Vince P argues that his lyrical reference to Kate Moss "as a paragon of female beauty" is so unique as to "undermine[] the possibility of coincidental similarity." We cannot go that far. In the first place, the lines are entirely different. In the second, analogizing to models as a shorthand for beauty is, for better or for worse, commonplace in our society. The particular selection of Kate Moss, who is very famous in her own right, adds little to the creative choice. And finally, the name alone cannot constitute protectable expression. *Feist*, 499 U.S. at 347; *Schroeder v. William Morrow & Co.*, 566 F.2d 3, 5 (7th Cir. 1977).

Even viewing all of these elements in combination, we conclude that Vince P has not plausibly alleged that *Stronger (KW)* infringes on *Stronger (VP)*. Vince P's theory is that the combination of the songs' similar hooks, their shared title, and their references to Kate Moss would permit a finding of infringement. But, as we have discussed, in the end we see only two songs that rhyme similar words, draw from a commonplace maxim, and analogize feminine beauty to a specific successful model. These songs are separated by much more than "small cosmetic differences," *JCW*, 482 F.3d at 916; rather, they

share only small cosmetic similarities. This means that Vince P's claim for copyright infringement fails as a matter of law. The judgment of the district court is AFFIRMED.

**APPENDIX**

*Stronger*
*Vince P*

Chorus (2x)
What don't kill me make me stronger
The more I blow up the more you wronger
You copped my CD you can feel my hunger
The wait is over couldn't wait no longer

Verse 1:
I came from the bottom of the bottom
To make it to the bottom
Snuck in the back door now I got
A&R's back then should have signed
Said I wasn't gangsta said I couldn't rhyme
Vince P why don't you stick to making beats
You know what how bout I rap on my beats
Make my own tracks stack my own stacks
I'm hot you a loser and that's a fact
I'm bout to take you back when emcees was real
Didn't care where you from or if you had a deal
Fist fights no guns no body packing steel
Family reunions food on the grill
This ain't my barbeque but can I get a plate
I'm still real hungry and I just ate
This ain't my barbeque but can I get a plate
I'm still real hungry and I just ate

Chorus (2x) [as before]

Verse 2:
I ain't from Europe but I wear Lacoste
And every day I hustle like Rick Ross
Trying to get a model chick like Kate Moss
Then trade her to another team like Randy Moss
I'm the chosen one cause I got the force
And I'm the unsigned hype but I'm not in the source
All these dudes in Chicago tried to diss me
Cause on the low they girls they kiss me
And when I'm on the road you know they miss me
Check out my MySpace check the Bentley
I'm moving on up like George and Weezy
And money on my mind like Little Weezy
I'm the brand new kick pusher music distributor
And make crazy rhymes like I'm related to Luda
You can find me at the Croc Lounge
Or at the Funky Buddha
Catch a plane from O'Hare straight to Burmuda
Check my lex diamonds call me Lex Luther
Don't like guns but my beats are ruggas
Can't you feel how these horns going right
 through you
Can't you feel how these horns going right
 through you
I'm Vince P and I'm going to the top
And I won't stop till I get to the top

You know my rhymes is hot and you know
   my beats is hot
You know Vince P is going going to the top

Chorus (2x) [as before]

*Stronger*

*Kanye West*


Chorus:
N-N-N-now th-th-that don't kill me
Can only make me stronger
I need you to hurry up now
Cause I can't wait much longer
I know I got to be right now
Cause I can't get much wronger
Man, I've been waitin' all night now
That's how long I've been on ya

Verse 1:
I need you right now
I need you right now
Let's get lost tonight
You could be my black Kate Moss tonight
Play secretary I'm the boss tonight
And you don't give a f*** what they all say right?
Awesome, the Christian in Christian Dior
Damn they don't make 'em like this anymore
I ask, cause I'm not sure
Do anybody make real sh*t anymore?
Bow in the presence of greatness
Cause right now thou has forsaken us
You should be honored by my lateness
That I would even show up to this fake sh*t
So go ahead go nuts go ape sh*t
Especially in my Pastelle or my Bape sh*t

Act like you can't tell who make this
New gospel homey take six, and take this, haters

Chorus [as before]

Verse 2:
I need you right now
I need you right now
me likey
I don't know if you got a man or not,
If you made plans or not
If God put me in your plans or not
I'm trippin' this drink got me sayin' a lot
But I know that God put you in front of me
So how the h*ll could you front on me
There's a thousand you's there's only one of me
I'm trippin', I'm caught up in the moment right?
This is Louis Vuitton Don night
So we gon' do everything that Kan like
Heard they'd do anything for a Klondike
Well I'd do anything for a blonde d*ke
And she'll do anything for the limelight
And we'll do anything when the time's right
ugh, baby you're makin' it (harder, better,
    faster, stronger)

Chorus [as before]

Verse 3:
I need you right now
I need you right now

You know how long I've been on ya?
Since Prince was on Apollonia
Since O.J. had Isotoners
Don't act like I never told ya (x6)
Baby you're making it (harder, better,
   faster, stronger)

Chorus [as before]