DESIGN BASICS, LLC and Plan Pros, Inc., Plaintiffs,

v.

BEST BUILT, INC. and Craig A. Kassner, Defendants.

Case No. 14–C–597

United States District Court, E.D. Wisconsin.

Signed 12/08/2016

Dana A. Lejune, Dana Andrew Lejune Attorney at Law, Houston, TX, Hannah J. Yancy, Michael T. Hopkins, IP–Litigation US LLC, Milwaukee, WI, for Plaintiffs.

Christina L. Peterson, Stellpflug Law SC, De Pere, WI, Christopher S. Snyder, Epiphany Law LLC, Appleton, WI, Daniel J. Hurst, Dempsey Law Firm LLP, Oshkosh, WI, Mark M. Leitner, Laffey Leitner & Goode LLC, Milwaukee, WI, Robert J. Janssen, Janssen Law LLC, Green Bay, WI, for Defendants.

## DECISION AND ORDER

William C. Griesbach, Chief Judge
United States District Court

In this action, Plaintiffs Design Basics, LLC and Plan Pros, Inc. allege Defendants Best Built Inc. and Craig Kassner infringed copyrights held by Plaintiffs in

architectural works. Arising under federal law, their claims provide this court with jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). The case is before the court on the parties' cross motions for summary judgment and partial summary judgment. Plaintiffs argue that they are entitled to partial summary judgment because they own valid copyrights, Defendants had access to Plaintiffs' protected works, and Defendants do not have a factual basis to support ten of their affirmative defenses. Defendants seek summary judgment on their affirmative defenses in which they contend that most of the alleged infringement at issue in the case is barred by the three-year statute of limitations or alternatively, that the case is subject to a release included in a settlement agreement entered into by Plaintiff Design Basics and a third-party. For the reasons below, Plaintiffs' motion will be granted in part and denied in part and Defendants' motion will be denied. The parties' motions to seal will be granted.

## BACKGROUND

Design Basics LLC and Plan Pros Inc. are Nebraska companies engaged in the business of creating, publishing, and licensing architectural plans and designs. (Pls.' Proposed Undisputed Facts (PPUF) at ¶ 1, ECF No. 153.) Best Built Inc. is a Wisconsin company that markets, constructs, and sells residential homes. Craig Kassner is a vice president and former president of Best Built. (Defs.' Proposed Undisputed Facts (DPUF) at ¶ 2, ECF No. 161.)

Plaintiffs claim that on May 25, 2011, they became aware of Defendants' alleged infringement of nine of Plaintiffs' copyright-protected residential home plans. (PPUF at ¶ 9.) Specifically, Plaintiffs assert that Best Built's "Columbia" home plan infringes Design Basics' "Bancroft" plan; Best Built's "Hampton" plan infringes Design Basics' "Monterey" plan; Best Built's "Mayfield" plan infringes Design Basics' "Tyndale" plan; Best Built's "Rialto" plan infringes Design Basics' "Laverton" plan; Best Built's "Saratoga" plan infringes Design Basics' "Paterson" plan; Best Built's "Calgary" plan infringes Design Basics' "Plainview" plan; and Best Built's "Weaver" plan infringes Design Basics' "Weaver" plan. Plaintiffs also discovered that Defendants constructed three-dimensional copies of Design Basics' Laverton, Paterson, Sinclair, Tyndale, and Weaver designs as well as Plan Pros' Sadie design. (*Id.* at ¶ 10.) Each of the Plaintiffs' plans were registered with the U.S. Copyright Office. (*Id.* at ¶ 6.)

Plaintiffs assert that their plans have become "ubiquitous in the marketplace." (*Id.* at ¶ 5.) Since 1996, Design Basics has marketed its architectural work on its website, http://www.designbasics.com. A former Best Built employee testified in deposition that, although he could not recall the names of any websites specifically, it was his practice to go to other designers' websites when drafting Defendants' plans. (*Id.* at ¶ 22.) Plaintiffs also provided publications to the Brown County Homebuilders Association and to construction companies who purchased them. (*Id.* at ¶ 16.) Defendant Craig Kassner's brother, Steven Kassner, ordered fifty-two catalogs for his construction company from January 7, 1992 through June 9, 2000. (*Id.* at ¶ 17.) Craig Kassner worked for his father's company, James Kassner Construction, from 1988 to 1992. (*Id.* at ¶ 23.) During that time, the two construction companies shared office space. (*Id.*) Defendants contend that they neither ordered Design Basics' home plan design books nor used the books purchased by Steven Kassner Construction. (DPUF at ¶¶ 10–11.)

However, through discovery, Plaintiffs learned that Defendants had access to Design Basics' "Weaver" design and Plan Pros' "Sadie" design. On April 19, 2016, Defendants produced their inventory of electronic plans. (PPUF at ¶ 24.) This production included a folder of designs for a home entitled "Weaver," which Plaintiffs contend is similar to Design Basics' copyright-protected plan also entitled "Weaver." (*Id.* at ¶¶ 25–26.) Defendants also produced a file containing a marked-up copy of Plan Pros' "Sadie" design. (*Id.* at ¶ 27.) Defendants concede that they had access to the "Weaver" and "Sadie" designs, but dispute that they had access to the Plaintiffs' other seven designs.

Defendants contend that the vast majority of the homes at issue in this case were built using architectural plans designed by another entity, Hoida Lumber & Components, Inc. a/k/a Hoida, Inc. and Hoida Design Services. (DPUF at ¶ 5.) Defendants seek partial summary judgment based on a settlement agreement entered into by Design Basics and a third-party, ProBuild Company LLC. (*Id.* at ¶ 13.) In 2010, Design Basics sued ProBuild, a national lumberyard, for widespread copyright infringement. On September 12, 2011, Design Basics and ProBuild entered into a confidential settlement agreement under which Design Basics released certain claims for infringement of its copyrights and agreed to license certain uses of its copyrights for plans drawn by ProBuild or its predecessors. (ProBuild Settlement Agreement (PSA), ECF No. 100–6.) Defendants assert that Hoida is a predecessor of ProBuild. (DPUF at ¶ 12.) As such, they argue many of Plaintiffs' claims against them are covered by the release and license included in the PSA.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

### A. Defendants' Late–Filed Motion

█ Defendants filed their motion for summary judgment on September 6, 2016. Yet, the parties were required to file their motions for summary judgment on September 5, 2016 in accordance with the scheduling order entered April 4, 2016. (ECF No. 132.) In their response to Defendants' motion for summary judgment, Plaintiffs requested that the Court strike Defendants' documents as untimely.

September 5, 2016, was Labor Day, a national holiday. Rule 6 of the Federal Rules of Civil Procedure provides that when the last day of the period of time within which a motion is to be filed falls on a Saturday, Sunday or legal holiday, "the period continues until the end of the next day that is not a Saturday, Sunday or legal holiday." Fed. R. Civ. P. 6(a)(1)(C). Defen-

dants reasonably assumed that because September 5 was a holiday, its motion was not due until the following day, September 6. Plaintiffs argue, however, that Rule 6 does not apply because the Court ordered dispositive motions filed by a date certain instead of within a period of time.

While it may be true that Rule 6 does not literally apply, I am satisfied that it would be unreasonable to strike Defendants' motion under the circumstances. Had I known that September 5 was Labor Day when I set the date, I would have moved it to September 6, 2016. I frequently note in scheduling motions that in the event the date I set falls on a weekend or holiday, the motion is due on the first business day thereafter. That was not done here, but it was not my intent or expectation that the attorneys or their staff would work on Labor Day. Moreover, Plaintiffs have not been prejudiced by the delay, and it would make no sense to subject the parties, the Court and the members of the public who would be summoned for jury duty if there was nothing to try. For all of these reasons, Defendants' motion will not be stricken.

## B. Ownership/Authorship

 To establish copyright infringement, a plaintiff must show "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). Defendants do not contest Plaintiffs' ownership to the copyrights at issue, and instead assert that Plaintiffs have failed to establish that they are the authors of the designs. Defendants claim that the documents that would have established authorship were destroyed after a roof leak in early 2010. (Defs.' Br. at 15, ECF No. 160.) Without citation to authority, Defendants assert that the evidence of docu-

ment destruction after the flood is sufficient to rebut the presumption of validity and that Plaintiffs will be unable to present admissible evidence to prove the requisite element of authorship.

Plaintiffs argue that they hold certificates of copyright registration issued by the United States Copyright Office for each of the works at issue. (Pls.' Counter-Statement of Undisputed Facts (PCSUF) at ¶ 33, ECF No. 168.) Certificates of registration are prima facie evidence of the copyright's validity. 17 U.S.C. § 410(c). Plaintiffs assert that they are not required to produce any further documentation beyond the certificates of registration, to prove validity. Defendants' reply brief does not address Plaintiffs' arguments. Because Defendants have failed to provide any further support for their claim that Plaintiffs are not the authors of the copyrighted works, the court finds that Plaintiffs presentation of their certificates of registration is sufficient to establish authorship and ownership of the copyrighted designs.

## C. Access

 Once it is established that the plaintiff owns a valid copyright, the court turns to whether the defendant has copied the protected work. Copying may be proven by direct evidence, such as an admission of copying. *JCW Invs.*, 482 F.3d at 915; *see also Peters v. West*, 692 F.3d 629, 633 (7th Cir. 2012). Where direct evidence is unavailable (which is generally the case), the plaintiff may create an inference that the defendant actually copied the original work by relying on circumstantial evidence to demonstrate that "the defendant had the opportunity to copy the original (often called 'access') and that the two works are 'substantially similar.'" *Peters*, 692 F.3d at 633. In short, Plaintiffs must show that Defendants "had an actual opportunity to copy the original ... and that the two

works share enough unique features to give rise to a breach of the duty to not copy another's work." *Id.*

■ Plaintiffs have moved for partial summary judgment on the question of opportunity—whether Defendants had access to Plaintiffs' copyright-protected plans. To prove access, the plaintiff may introduce direct evidence that the defendant actually viewed, read, or heard the work. 6 W. Patry, Copyright § 9:24 (2013). For instance, the plaintiff could present direct evidence that the work was sent to the defendant or a close associate of the defendant. *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984). Here, Plaintiffs have presented direct evidence that Defendants viewed two designs at issue: Design Basics' "Weaver" and Plan Pros' "Sadie." On April 19, 2016, Defendants produced their inventory of electronic plans. (PPUF at ¶ 24.) Included in Defendants' production was a folder of designs for a home entitled "Weaver," which Plaintiffs contend is similar to Design Basics' copyright-protected plan also entitled "Weaver." (*Id.* at ¶¶ 25–26.) Defendants also produced a file containing a marked-up copy of Plan Pros' "Sadie" design. (*Id.* at ¶ 27.) While Defendants contend that they had access to the "Weaver" and "Sadie" designs, they dispute that they had access to the other seven designs.

■ When the plaintiff cannot produce direct evidence of access, he "may be able to establish a reasonable possibility of access when the complaining work has been widely disseminated to the public." *Selle*, 741 F.2d at 901 (citation omitted). Evidence that only creates a "bare possibility" that the defendant had access, however, is not enough. *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 3 (1st Cir. 1996). Here, Plaintiffs have presented evidence demonstrating that their works have been "widely disseminated throughout the residential home design and construction industry" to show that Defendants had access to their copyrighted works. (Pls.' Br. at 12, ECF No. 152.)

Plaintiffs contend that Design Basics was one of the first home plan design companies to market and distribute its architectural works in catalogs throughout the United States. Since 1996, Design Basics has marketed its architectural works on its website, http://www.designbasics.com. Design Basics also provides its publications to the Brown County Homebuilders Association of which Craig Kassner is a member. (PPUF at ¶ 16.) Through the use of its website and other marketing activities, Plaintiffs argue their plans have become "ubiquitous in the marketplace." (*Id.* at ¶ 5.)

Plaintiffs rely on *Design Basics, LLC v. DeShano Cos., Inc.*, No. 10-14419, 2012 WL 4321313 (E.D. Mich. Sept. 21, 2012), for the proposition that access is merely the opportunity to have viewed the protected designs. However, *DeShano* is distinguishable from the case at hand. There, an architectural firm holding copyrights on residential houses brought an infringement claim against a builder. *Id.* at *1. The defendants conceded that although they had access to one of the copyrighted designs, they did not have access to the other six. The plaintiff presented a summary detailing the publication dates for each copyrighted design at issue. *Id.* at *13. The plaintiff also presented testimony from one of the defendants' employees stating that the defendants were on the plaintiff's mailing list and received plan books "all the time." *Id.* The district court held that the defendants had reasonable opportunity to view and copy the plaintiff's work. The court reasoned that the defendants' concession to having access to one of the designs "sheds light on Defendants' opportunity to copy all the other plans." *Id.* at

*14. That, along with the plaintiff's evidence establishing when each design was distributed and the employee's testimony was sufficient to demonstrate access.

Even though Defendants concede they had access to the "Weaver" and "Sadie" designs, I cannot conclude, based on this concession alone, that they had access to the other seven designs they are accused of copying. Unlike the plaintiffs in *DeShano*, Plaintiffs have not presented evidence that Defendants had access to every work at issue in this case. Although a former Best Built employee testified in deposition that it was his practice to go to other designers' websites when drafting Defendants' plans (PPUF at ¶ 22), he did not recall the names of any of the websites he visited. Plaintiffs claim they distribute their copyrighted works throughout the residential home design and construction industry, but they have not submitted any evidence that Defendants had the opportunity to view the other works at issue. While Plaintiffs provided publications to the Brown County Homebuilders Association, Best Built never bought or ordered Design Basics' home plan design books. (DPUF at ¶ 10.)

Plaintiffs assert that Defendants also had a reasonable opportunity to view the copyrighted plans through their connection to Steven Kassner Construction, Inc. Plaintiffs contend that Steven Kassner Construction, operated by Craig Kassner's brother, ordered fifty-two Design Basics catalogs from January 7, 1992 through June 9, 2000. (PPUF at ¶ 17.) Defendant Craig Kassner worked for his father's company, James Kassner Construction, from 1988 to 1992. (*Id.* at ¶ 23.) During this time, James Kassner Construction and Steven Kassner Construction shared office space. (*Id.*) Defendants contend that they neither ordered Design Basics' home plan design books nor used the design books bought by Steven Kassner Construction. (DPUF at ¶¶ 10–11.)

Plaintiffs cite to an unpublished Sixth Circuit opinion noting that "evidence that a third party with whom both plaintiff and defendant were dealing had possession of plaintiff's work is sufficient to establish access by the defendant." *Winfield Collection, Ltd. v. Gemmy Indus., Corp.*, 147 Fed.Appx. 547, 553 (6th Cir. 2005). Yet, Plaintiffs have not demonstrated that the copyrighted works at issue in this case were any of the "several dozen designs" contained in the catalogs sent to Steven Kassner. (Pls.' Br. at 13, ECF No. 152.) Further, Plaintiffs have not shown that Defendants even looked at the books ordered by Steven Kassner Construction, a wholly independent construction company from that of Defendants.

Plaintiffs have not cited any cases holding that the defendant's access to a plaintiff's other copyrighted works can raise an inference that the defendant had access to the works his designs are accused of copying. *See Lexington Homes*, No. 14–CV–1102 at 9. To permit a plaintiff to claim the defendant had access to the works at issue based solely on evidence regarding its other works would make the access element altogether meaningless because it would invite the jury to infer that Defendants had access to the works at issue without establishing any evidentiary basis for doing so. "[T]he jury cannot draw an inference of access based upon speculation and conjecture alone." *Selle*, 741 F.2d at 901. Although the court cannot find that Plaintiffs are entitled to judgment as a matter of law, this does not mean their claims fail. Ultimately, I conclude that a dispute of fact exists as to whether Defendants had access to Plaintiffs' designs. Indeed, Defendants concede that they had access to two of Plaintiffs' designs. The court cannot find as a matter of law that Defendants

had access to Plaintiffs' works from this concession alone. At the same time, however, Defendants' concession prevents the court from concluding that they did not have the opportunity to copy Plaintiffs' original works. Accordingly, while Plaintiffs' motion for summary judgment is denied, a factual question still remains as to whether Defendants had access to Plaintiffs' plans.

## D. Settlement Agreement

Defendants contend that even if they copied all of the designs at issue, their alleged infringement of Design Basics' designs [1] is subject to a release included in a settlement agreement entered into by Design Basics and a third party. In 2010, Design Basics sued ProBuild, a national lumberyard, for widespread copyright infringement. On September 12, 2011, Design Basics and ProBuild entered into a confidential settlement agreement under which Design Basics released certain claims for infringement of its copyrights and agreed to license certain uses of its copyrights. (DPUF at ¶ 14.) Defendants argue Plaintiffs' claims against them are covered by the release included in the PSA.

■■ Before the court determines whether Plaintiffs' claims are barred by the PSA, the court must address whether Defendants have standing to assert a defense under the agreement. The parties do not dispute that Wisconsin law applies to the interpretation of the PSA. As a general rule, only the parties to a contract and third-party beneficiaries may sue under the contract. *State ex rel. Journal/Sentinel, Inc. v. Pleva*, 155 Wis.2d 704, 710, 456 N.W.2d 359 (1990) (citing *Abramowski v. Wm. Kilps Sons Realty, Inc.*, 80 Wis.2d 468, 472, 259 N.W.2d 306 (1977); *Lamb v.*

*Manning*, 145 Wis.2d 619, 626, 427 N.W.2d 437 (Ct. App. 1988)). Because Defendants were not parties to the PSA, the court must first resolve whether they are third-party beneficiaries to the agreement.

■■ Under the language of the release provision, customers of ProBuild and its predecessors were intended to be third-party beneficiaries of the PSA. "[T]he generally accepted rule is that a third-party need not demonstrate that he, individually, was intended to benefit from the contract; rather, it is sufficient if the third-party demonstrates that he was a member of a class of beneficiaries intended by the parties to benefit from it." *Pappas v. Jack O.A. Nelsen Agency, Inc.*, 81 Wis.2d 363, 370–72, 260 N.W.2d 721 (1978) (citations omitted). Here, Design Basics released "all rights, claims, demands, actions, and causes of action whatsoever, known or unknown, whether actual or potential, that they may have against *any customer of ProBuild or of ProBuild's predecessors* to the extent such rights, claims, demands, damages, actions, or causes of actions arise from or relate to ProBuild or its predecessor having drawn a home plan for that customer prior to the Effective Date of this Agreement . . . ." (PSA at 3 (emphasis added).) In short, Defendants must demonstrate that they are a member of a class of beneficiaries intended by the parties to benefit from the PSA's release.

Here, Defendants claim they are third-party beneficiaries of the PSA because from 1992 to the early 2000s, Best Built purchased architectural plans from Hoida, an alleged predecessor of ProBuild. But Defendants have not submitted any evidence indicating that their plans were drawn for them by Hoida or that Hoida is even a ProBuild predecessor. Neverthe-

---

1. Defendants do not argue that the release applies to their alleged infringement of Plan Pros' "Sadie" design because Plan Pros was not a party to the settlement agreement.

less, even if Defendants are third-party beneficiaries to the PSA, they are not entitled to its release or license provisions. Defendants contend that under the broad language of the PSA, they are entitled to dismissal on all claims relating to six of the Design Basics copyrights they are alleged to have infringed. These cover Design Basics' "Bancroft," "Monterey," "Tyndale," "Laverton," "Paterson," and "Plainview" designs. In support of their motion, Defendants have submitted a sworn declaration by Craig Kassner stating that, with the exception of the "Weaver," "Sinclair," and "Sadie" designs, he has "no reason to believe" that the plans at issue in this case were prepared by anyone other than Hoida. (Kassner Decl. ¶ 5, ECF No. 159.)

■ Plaintiffs argue Defendants have failed to produce any evidence to prove they are entitled to a release of liability for the infringing plans at issue within the 60–day time limit. The PSA indicates that "[a]s concerns pending lawsuits, Design Basics and Prime Designs may deliver written notice to ProBuild ... that identifies the defendants and the home plans at issue in that lawsuit." (PSA at 3.) If within 60 days of receipt of the written notice ProBuild fails to provide sufficient evidence that it or its predecessor created the home plan at issue for the defendant, the release does not apply with respect to that plan for that defendant. (*Id.* at 4.) Here, Plaintiffs claim that they sent written inquiry to ProBuild regarding Defendants' "Columbia," "Hampton," "Mayfield," "Rialto," "Saratoga," and "Calgary" designs. (PPUF at ¶ 25.) Plaintiffs did not receive a response to their inquiry. (PPUF at ¶ 26.) Because the 60–day period to provide sufficient evidence establishing that ProBuild or its predecessor created the designs for Defendants, Plaintiffs argue that the release does not apply to Defendants' plans.

Defendants contend that the 60–day notice and "sufficient evidence" requirements only apply to lawsuits filed prior to September 12, 2011, the PSA's effective date. Because this lawsuit was not filed until May 22, 2014, they argue, they were not required to provide Design Basics with sufficient evidence within 60 days of Design Basics' infringement inquiry to ProBuild. Plaintiffs counter that "pending lawsuits" under the terms of the PSA means all lawsuits pending at the time of the effective date as well as lawsuits brought by Design Basics against alleged infringers in the future and that are therefore "pending" at the time the release is asserted.

Under Wisconsin law, the construction of a contract is a question of law. *Elkhart Lake's Road Am. v. Chi. Hist. Races, Ltd.*, 158 F.3d 970, 972 (7th Cir. 1998). Judicial interpretation of a contract seeks to determine and give effect to the contracting parties' intent by looking to the language of the contract itself. *Seitzinger v. Cmty. Health Network*, 2004 WI 28, ¶ 22, 270 Wis.2d 1, 676 N.W.2d 426. Where the contract's terms are clear and unambiguous, the court must "construe the contract according to its literal terms," giving the terms their plain and ordinary meaning. *Gorton v. Hostak, Henzl &Bichler, S.C.*, 217 Wis.2d 493, 506, 577 N.W.2d 617 (1998); *see also Huml v. Vlazny*, 2006 WI 87, ¶ 52, 293 Wis.2d 169, 716 N.W.2d 807. However, when the contractual terms are reasonably susceptible to more than one construction, the contract is ambiguous. *Gorton*, 217 Wis.2d at 507, 577 N.W.2d 617. Any ambiguity is to be construed against the drafter. *Id.* Yet, courts interpret the contract's language "consistent with what a reasonable person would understand the words to mean under the circumstances." *Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶ 44, 326 Wis.2d 300, 786

N.W.2d 15 (quoting *Seitzinger*, 2004 WI 28, ¶ 22, 270 Wis.2d 1, 676 N.W.2d 426).

To give effect to the intent of Design Basics and ProBuild, the contracting parties, the court finds that the 60–day notice and "sufficient evidence" requirements apply to lawsuits pending at the time the parties entered into the PSA as well as to lawsuits pending in the future. After all, the purpose of the PSA is to create a uniform, streamlined process for Design Basics and ProBuild to determine whether defendants in lawsuits brought by Design Basics qualify for the release or license. The PSA does not set forth specific procedures relating to the time and manner in which alleged infringers in future lawsuits are required to pursue to demonstrate that the release applies to their accused designs. It therefore follows that the parties intended for these requirements to apply to all lawsuits that were pending, whenever filed, at the time the release was asserted as a defense. This reading of the PSA is consistent with what a reasonable person would understand "pending lawsuit" to mean under the circumstances. *See Maryland Arms*, 2010 WI 64, ¶ 44, 326 Wis.2d 300, 786 N.W.2d 15. In short, Defendants were required to provide sufficient evidence establishing they were eligible for the release within 60 days of ProBuild receiving Design Basics' inquiry. Defendants failed to meet this deadline.

 Even if the 60–day period to present evidence to Plaintiffs had not expired, the evidence submitted by Defendants falls significantly short of what is necessary to demonstrate that they qualify for the release. The PSA states that in order to obtain the benefit of the release, "ProBuild or the alleged infringer must show by contemporaneous invoice or other documentation that ProBuild or one of its predeces-

sors copied or created a derivative of the home plan for the alleged infringer prior to the Effective Date of this Agreement." (PSA at 4.) The PSA states that sufficient evidence "shall include a contemporaneous home plan in ProBuild's files (i) that is substantially similar to the home plan at issue and (ii) that was prepared for the alleged infringer by ProBuild or its predecessor prior to the Effective Date as shown by documentation or sworn statement by a person with personal knowledge." (*Id.*)

Here, the only evidence Defendants have provided to demonstrate that they are entitled receive the benefit of the release is Defendant Craig Kassner's declaration. But even his declaration does not affirmatively state that all of the plans at issue were designed by ProBuild or one of its predecessors. Instead, he declares, "I have no reason to believe that any of the allegedly infringing architectural plans that are the subject of this lawsuit were acquired from any source other than from Hoida." (Kassner Decl. ¶ 5, ECF No. 159.) Without more, Defendants have failed to establish that Plaintiffs' claims against them are covered by the release. Accordingly, Defendant's motion for summary judgment is denied.

## E. Defendants' Affirmative Defenses

Plaintiffs maintain that they are entitled to summary judgment on ten of Defendants' affirmative defenses (2, 3, and 8 through 15[2]) because Defendants have failed to identify sufficient evidence to meet their burden of proof on any of them. Defendants respond that their affirmative defenses are legally sound and rest on triable issues of fact. (Def.'s Br. in Opp. at 7, ECF No. 175.) They mention in passing that they are still trying to obtain evidence to support their "responsible third party"

---

**2.** Plaintiffs label these defenses 1, 2, 7, 8, 10, 11, 12, 13, and 14.

and "prohibition against multiple recoveries" defenses through the complete unredacted copy of the PSA. In any event, Defendants only attempt to support two affirmative defenses: the statute of limitations and waiver.

### 1. Statute of Limitations (No. 10)

■ Defendants assert that Plaintiffs' claims are barred by the three-year statute of limitations applicable to copyright infringement claims. 17 U.S.C. § 507(b). They argue that, with the exception of one house, all of the homes were constructed by 2010, more than three years prior to the filing of this lawsuit. Defendants contend that under the incident to injury rule, the statute of limitations began to run when the homes were constructed as opposed to when Plaintiffs first discovered the alleged copyright infringement. Conversely, Plaintiffs argue that the court should apply the discovery rule. Under the discovery rule, Plaintiffs' claims are not time-barred because they did not discover the alleged infringement until May 25, 2011. Alternatively, Plaintiffs argue that their claims are not barred by the statute of limitations under the doctrine of equitable tolling.

The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). The Seventh Circuit has adopted the "discovery rule" to analyze statute of limitations defenses, meaning the statute of limitations begins to run when "the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights." *Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004) (citing *Taylor v. Meirick*, 712 F.2d 1112, 1117 (7th Cir. 1983)); *see also* 6 W. Patry, Copyright § 20:19 (2013) ("The overwhelming majority of courts use discovery accrual in copyright cases.").

Defendants rely on *Petrella v. Metro–Goldwyn–Mayer, Inc.*, —— U.S. ——, 134 S.Ct. 1962, 188 L.Ed.2d 979 (2014), for the proposition that copyright claims accrue when the infringing act occurs, rather than when the act is discovered. The issue in *Petrella* was whether laches can serve as a complete defense to a copyright claim that is timely filed. The Court began its analysis by determining when the statute of limitations started to run. *Id.* at 1969. Although the Court noted that copyright claims generally accrue when the infringing act occurs, it recognized that "nine Courts of Appeals have adopted, as an alternative to the incident of injury rule, a 'discovery rule,' which starts the limitations period when 'the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for his claim.'" *Id.* at 1969 n.4 (quoting *William A. Graham Co v. Haughey*, 568 F.3d 425, 433 (3d Cir. 2009)). The Court applied the injury rule and ultimately found that laches does not bar a copyright infringement claim filed within the three-year statute of limitations. *Petrella*, 134 S.Ct. at 1972–73. The Court did not, as Defendants assert, conclude that courts are required to apply the incident of injury rule to copyright infringement claims.

Since *Petrella*, courts in this district have continued to apply the discovery rule. *See, e.g., Design Basics LLC v. J & V Roberts Invs., Inc.*, 130 F.Supp.3d 1266 (E.D. Wis. 2015); *Design Basics LLC v. Campbellsport Bldg. Supply Inc.*, 99 F.Supp.3d 899 (E.D. Wis. 2015). As these courts have recognized, this court is bound by the controlling law of the Seventh Circuit. Until the Seventh Circuit holds otherwise, this court will continue applying the discovery rule to determine when a plaintiff's copyright infringement claim accrues.

Again, Plaintiffs assert that they discovered Defendants' alleged infringement on May 25, 2011. Plaintiffs filed the instant action on May 22, 2014. Defendants, who have the burden of proof on the issue, have cited no evidence to the contrary. Accordingly, Plaintiffs' claims are not barred by the Copyright Act's three-year statute of limitations.

## 2. Waiver (No. 15)

■ Plaintiffs argue Defendants' fifteenth affirmative defense, waiver, should be dismissed. Defendants assert that Plaintiffs' claims are "barred because they abandoned and waived any applicable copyright." (Answer to Am. Compl. at 6, ECF No. 137.) Defendants have done nothing to support their waiver defense, as they only argue that Plaintiffs waived their right to pursue claims based on plans purchased from ProBuild and ProBuild's predecessors when it entered into the PSA. Defendants do not explain or support how this fact necessarily means that Plaintiffs waived or abandoned any applicable claims to their copyright. While Design Basics agreed to release certain individuals from claims, Defendants offer no evidence that Design Basics waived its right to bring claims against alleged infringers it believed were not covered by the terms of the release or license provisions of the PSA. Again, Defendants have the burden of proof on their affirmative defenses, and summary judgment is the time for the party with the burden of proof to show it has some evidence such that a jury could find in its favor. *See Goodman v. National Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir.2010) ("We often call summary judgment, the 'put up or shut up' moment in litigation."). Defendants have cited no evidence in support of their waiver affirmative defense separate and apart from their claim under the PSA. Plaintiffs' motion for summary judgment on this defense is therefore granted.

## 3. Remaining Affirmative Defenses (Nos. 2, 3, 8, 9, 11, 12, 13 and 14)

Plaintiffs seek summary judgment on Defendants' affirmative defenses of failure to mitigate damages, independent creation, allegedly infringing works not substantially similar, copyright registrations are invalid because the certificates were not made before or within five years after first publication, responsible third party, *de minimus* use, misuse of copyright, and prohibition against multiple recovery for the same injury. (Pls.' Br. at 17–18, ECF No. 152.) Defendants have completely failed to point to any evidence in the record to support their affirmative defenses. The purpose of Rule 56 is to streamline and narrow the issues for trial. To repeat, "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in the lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (internal quotation marks and citations omitted). While Defendants mention that they are still trying to obtain evidence to support their "responsible third party" and "prohibition against multiple recoveries" defenses through the complete unredacted copy of the PSA, they have not indicated how the PSA will support their theories. They did not offer explanations as to why they have not offered evidence supporting their other defenses. In short, Defendants have failed to offer sufficient evidence to allow a reasonable jury to find in their favor on any of their affirmative defenses. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accord-

ingly, Plaintiffs' motion for summary judgment dismissing Defendants' affirmative defense nos. 2, 3, 8, 9, 11, 12, 13, and 14 will be granted.

## CONCLUSION

For the reasons above, Plaintiff's motion for partial summary judgment (ECF No. 151) is **GRANTED** in part and **DENIED** in part.

For the reasons above, Defendants' motion for summary judgment (ECF No. 158) is **DENIED**.

For good cause shown, the parties' motions to seal (ECF Nos. 157, 166, 178) are **GRANTED**. Good cause is based on the fact that the sealed exhibits and filings contain information included in a confidential settlement agreement, i.e., the PSA. Confidentiality of such documents encourages and promotes the public interests inherent in the settlement of lawsuits.

**SO ORDERED** this 8th day of December, 2016.