In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 24-1119 & 24-2378

EDDIE RICHARDSON,

*Plaintiff-Appellant, Cross-Appellee,*

*v.*

KARIM KHARBOUCH,

*Defendant-Appellee, Cross-Appellant.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-02321 — **Nancy L. Maldonado**, *Judge*.

ARGUED SEPTEMBER 27, 2024 — DECIDED OCTOBER 16, 2025

Before BRENNAN, *Chief Judge*, and JACKSON-AKIWUMI and
PRYOR, *Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. Eddie Richardson sued
Karim Kharbouch for infringement under the Copyright Act,
alleging that Kharbouch illegally used his beat in a chart-
topping song. *See* 17 U.S.C. § 501. The district court, following
two rounds of summary judgment briefing during which
both sides repeatedly violated the court's local rules, granted
summary judgment on the merits in Kharbouch's favor.

Kharbouch then moved for statutory attorney's fees and costs as the prevailing party. The court granted his request for costs, but not fees.

Richardson appeals the district court's decision to not enforce the local rules against Kharbouch and its grant of summary judgment. Kharbouch separately cross-appeals the denial of fees. Having consolidated the two appeals, we affirm the district court's judgment on each issue.[1]

As to summary judgment specifically, Richardson has not presented sufficient evidence to show that Kharbouch infringed his copyrighted work. The class of copyright Richardson obtained protects against duplication of the digital track but permits imitation of the underlying musical composition. Because Richardson has not presented evidence that Kharbouch duplicated his work as opposed to merely imitating it, we must affirm the district court's grant of summary judgment in Kharbouch's favor.

**I**

In 2012, sixteen-year-old Eddie Lee Richardson enjoyed making instrumental hip-hop beats and uploading them to the internet under the moniker Hotwire the Producer. One beat Richardson crafted is titled "*Hood* Pushin Weight" (HPW). The track has all the trappings of a successful hip-hop instrumental: deep percussion, rhythmic snare, and melodic detailing. Richardson made sure to identify himself as the creator of the beat by placing digital vocalizations of his

---

[1] We have elected to decide Kharbouch's appeal of the district court's denial of attorney's fees without oral argument. The briefs and record adequately presented the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

professional moniker on the recording. But he did not copyright the track before uploading it to a music sharing website.

Months after creating HPW, Richardson unexpectedly recognized it in the background of a chart-topping hit. That hit was "Ain't Worried About Nothin" (AWAN) by rapper Karim Kharbouch, whose stage name is French Montana. Believing the rapper had copied his song, Richardson contacted him on social media and demanded credit for AWAN's beat. Kharbouch responded only to tell Richardson to speak with Kharbouch's producer, Rico Love. Richardson ostensibly exchanged messages with Rico Love but has not presented a record of those communications.

The day after Richardson first heard AWAN, he registered a sound recording copyright of his creation, HPW, with the United States Copyright Office. He did not obtain a musical composition copyright. Meanwhile, over time, AWAN became a hit, ultimately ranking number one on the Billboard charts.

Richardson sued Kharbouch under the Copyright Act in 2019. He alleged two counts of copyright infringement and sought proceeds from Kharbouch's live performances of the song and as well as to permanently enjoin Kharbouch from performing the song.[2] *See* 17 U.S.C. § 501.

There were two rounds of summary judgment briefing in the district court. The arguments presented in the initial

---

[2] Richardson no longer argues that Kharbouch is liable for infringement based on Kharbouch's alleged distribution of AWAN. Richardson also concedes that he may only seek proceeds from Kharbouch's live performances that post-date April 5, 2016, based upon the applicable three-year statute of limitations.

round are irrelevant to the present appeal, but certain aspects of the motions practice during that initial round are central to our decision.

For one, neither party complied with the local rules governing summary judgment practice. Local Rule 56.1 requires parties moving for summary judgment to provide a "statement of material facts that complies with LR 56.1(d) and that attaches the cited evidentiary material." N.D. Ill. L.R. 56.1(a)(2). Non-movants must "file a response" to this statement of material facts "that complies with LR 56.1(e) and that attaches any cited evidentiary material not attached" to the movant's statement. N.D. Ill. L.R. 56.1(b)(2). Parties who fail to properly dispute an asserted fact run the risk of the district court deeming the uncontroverted fact admitted at summary judgment. N.D. Ill. L.R. 56.l(e)(3).

During the initial round of summary judgment briefing, Richardson failed to respond to all but one alleged fact in Kharbouch's statement of material facts. Similarly, Kharbouch failed to respond to Richardson's statement of material facts and statement of additional facts. Despite having the discretion to do so, the district court declined to penalize the parties by deeming all the undisputed facts admitted. On the merits, the court denied Richardson's motion for summary judgment while granting in part and denying in part Kharbouch's motion for partial summary judgment.

Another aspect of the initial round of summary judgment briefing worth mentioning is Kharbouch's reply brief. In his reply brief, Kharbouch made what the district court later described as a "passing comment" that pointed to a potentially dispositive issue—the nature of Richardson's copyright. Because neither party had developed the issue, the court

ordered a second round of summary judgment briefing sua sponte.

During the second round of briefing, the operative question was whether Richardson had presented evidence that Kharbouch, when creating AWAN, duplicated or sampled HPW's digital recording as opposed to merely imitating it. As evidence of duplication, Richardson primarily relied on the tracks' striking similarity and on testimony from an expert witness who was a music producer, writer, and teacher. The expert opined that digital sampling was common in the hip-hop industry and, separately, that the two tracks were "shockingly similar," shared many common motifs, and were "extremely unlikely" to have had a common public source. The expert did not state whether AWAN actually sampled any portion of HPW's digital track.

When the second round of briefing concluded, the district court issued its opinion. Before reaching the merits, the court noted the parties' continued failure to adhere to the local rules. Indeed, despite the court's prior warning, neither Kharbouch nor Richardson had filed any response to the other party's statement of facts. Nevertheless, the court once again declined to deem all facts admitted for prudential reasons.

As for the merits, the question before the district court was whether Richardson presented qualifying evidence that Kharbouch had digitally sampled HPW. The court discussed the differences in protections conferred by sound recording copyrights and musical composition copyrights. Assessing the factual record in its entirety, the court found that Richardson's two factual assertions—that the songs sound alike and sampling was common practice—could not prove duplication or sampling as opposed to imitation. The court explained that

because Richardson only had a copyright to HPW's digital sound recording and not to its musical composition, to survive summary judgment, Richardson would have had to present evidence of how AWAN was produced and whether Kharbouch's producer Rico Love duplicated HPW's digital track. Because Richardson did not present any such evidence, the court awarded judgment to Kharbouch as a matter of law.

Meanwhile, after winning at summary judgment, Kharbouch moved for attorney's fees and costs under the Copyright Act. The district court awarded costs but denied fees.

Richardson now appeals, challenging the district court's handling of the parties' Rule 56.1 statements and its grant of summary judgment to Kharbouch. Kharbouch cross-appeals the denial of fees. We address each challenge in turn.

**II**

Richardson argues the district court abused its discretion by declining to treat Richardson's unopposed factual allegations as admitted under the district court's local rules. *See* N.D. Ill. L.R. 56.l(e)(3).

We review the enforcement of local rules for abuse of discretion. *See Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002). "[L]itigants have no right to demand strict enforcement of local rules by district judges." *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013). "[T]he decision to overlook any transgression of the local rules is left to the district court's discretion." *Id.* (citation modified).

There was no abuse of discretion here. Both parties failed to adhere to the applicable rules and ran the substantial risk of their opponent's proposed facts being deemed admitted. The district court refrained from enforcing the local rules

against Richardson *and* Kharbouch. As such, the court's decision benefitted Richardson as much as it did Kharbouch.

Yet, Richardson does not ask us to deem both statements of fact admitted. He only asks that his own Local Rule 56.1 statement receive such treatment without providing any support for this type of outcome. *Cf. Stevo*, 662 F.3d at 887 (finding no abuse of discretion where, among other things, the "district court did not enforce (or relax) the rules unequally as between the parties"). We affirm the district court's approach.

## III

We review a grant of summary judgment *de novo. Thompson Corrugated Sys., Inc. v. Engico, S.R.L.*, 111 F.4th 747, 751 (7th Cir. 2024). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We construe all facts and reasonable inferences drawn from those facts in the light most favorable to Richardson as the nonmoving party. *Poer v. Astrue*, 606 F.3d 433, 438–39 (7th Cir. 2010).

We affirm the district court's grant of summary judgment in Kharbouch's favor. Because the question of what types of evidence suffice to make out a sound recording copyright infringement claim is a matter of first impression for our court, we walk through our reasoning. We first lay out the elements of a copyright infringement claim. Then, we discuss the differing protections conferred by the classes of copyrights at issue in this case—musical composition copyrights and sound recording copyrights. Finally, we review the district court's decision.

### A. Elements of a Copyright Infringement Claim

To make out a copyright infringement claim, a plaintiff must show: (1) "ownership of a valid copyright," and (2) "copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Here, the parties do not contest that Richardson owns a valid copyright for HPW. *See Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir. 1994) ("A certificate of registration from the U.S. Register of Copyrights constitutes prima facie evidence of the validity of a copyright."). Therefore, our inquiry focuses only on the second element.

The second element of a copyright infringement claim involves two questions: (1) "whether, as a factual matter, the defendant copied the plaintiff's protected work (as opposed to independently creating a similar work)," and (2) "whether the copying 'went so far as to constitute an improper appropriation.'" *Design Basics, LLC v. Signature Constr., Inc.*, 994 F.3d 879, 887 (7th Cir. 2021) [hereinafter *Signature Construction*] (quoting *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982)).

To answer the first question, a plaintiff may prove copying either by direct or indirect evidence. *Id.* "[D]irect evidence, such as an admission of copying," is rarely available. *Peters v. West*, 692 F.3d 629, 633 (7th Cir. 2012). So many cases turn on indirect evidence. *See Signature Constr.*, 994 F.3d at 887. To make out a case based on indirect evidence, a plaintiff must present: (1) "evidence that the defendant had access to the plaintiff's copyrighted work (enough to support a reasonable inference that the defendant had an *opportunity* to copy)"; and (2) "evidence of a substantial similarity between the plaintiff's work and the defendant's work (enough to support a

reasonable inference that copying *in fact* occurred)." *Id.* (citing *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017) [hereinafter *Lexington Homes*]). While "proof of access may not be required" where the works at issue bear an "uncanny resemblance" to one another, such cases are exceedingly rare. *Lexington Homes*, 858 F.3d at 1100. More commonly, a plaintiff "must separately prove both access and similarity." *Id.*

*Signature Construction* outlines the steps for a plaintiff to prove copying has taken place. But the decision does not tell us what conduct qualifies as copying—the facts in that case did not require as much. 994 F.3d at 887. The answer depends on the type of copyright at issue, our next topic.

### B. Musical Composition Copyrights & Sound Recording Copyrights

Different types of copyrights confer different kinds and amounts of power to the holder. Therefore, plaintiffs alleging infringement must present evidence of copying that is attuned to the class of copyright at issue.

Relevant in this case are the musical composition and sound recording variants of copyrights.

Holders of musical composition copyrights enjoy rather expansive powers. Such copyrights grant the owner the exclusive right:

> (1) to reproduce the copyrighted work in copies
> or phonorecords;

> (2) to prepare derivative works based upon the
> copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; [and]

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly[.]

17 U.S.C. § 106(1)-(5).

On the other hand, sound recording copyrights only protect those sounds "that directly or indirectly recapture the actual sounds fixed in the recording" from infringement. 17 U.S.C. § 114(b). This type of copyright's protections "do not extend to the making or duplication of another sound recording that consists entirely of an independent fixation of other sounds, *even though such sounds imitate or simulate those in the copyrighted sound recording.*" *Id.* (emphasis added). The right to prepare derivative works from copyrighted sound recordings is limited to "actual sounds fixed in the sound recording." *Id.* And the right to bar others from performing copyrighted sound recordings extends only to "perform[ances of] the copyrighted work publicly by means of a digital audio transmission." 17 U.S.C. § 106(6); *see also id.* § 114(a).

In light of this statutory text, the district court held that a plaintiff holding a sound recording copyright must present evidence that a defendant actually copied the specific digital sound elements in the work at issue. Other courts in our circuit have held the same. *See, e.g.*, *Capitol Recs., Inc. v. Koyate*, No. 2:06-CV-395 JVB, 2008 WL 2857237, at *7 (N.D. Ind. July 22, 2008); *Janky v. Farag*, No. 3:05-CV-217-PRC, 2006 WL 8441604, at *11 (N.D. Ind. May 15, 2006).

We agree with this analysis. To make out a claim of copyright infringement, a sound recording copyright holder must present evidence that the defendant duplicated the specific digital sounds employed in the copyrighted material. Evidence that the works contained the same generic sounds without specific facts about those sounds' origins may be sufficient to show infringement of a musical composition copyright, but not a sound recording copyright. Said another way, "a band play[ing] and record[ing] its own version of [a track with a sound recording copyright] in a way that sounded very similar to the copyrighted recording" does not violate the law "so long as there was no actual copying of the recorded [track]." *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 883 (9th Cir. 2016).

The Copyright Act's legislative history supports our interpretation. A congressional report discussing the statute "makes clear" that copyright protection for "sound recordings extends only to the particular sounds of which the recording consists" and does not prevent "imitation of a recorded performance." H.R. REP. 94-1476, at 106 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5659, 5721. A sound recording copyright, the report states, "would not prevent a separate

recording of another performance in which those sounds are imitated." *Id.*

Our conclusion also comports with the dominant treatment of sound recording copyrights around the country. In the Ninth Circuit, "[a] new recording that mimics the copyrighted recording is not an infringement, even if the mimicking is very well done, so long as there was no actual copying." *VMG Salsoul*, 824 F.3d at 883. The Fifth Circuit has held that plaintiffs with a sound recording copyright must "show that the defendants sampled his songs—not that the songs 'sound' similar." *Batiste v. Lewis*, 976 F.3d 493, 505 (5th Cir. 2020). The Sixth Circuit has found that the statutory language describing sound recording copyrights in 17 U.S.C. § 114(b) leaves "the world at large … free to imitate or simulate the creative work fixed in the recording so long as an actual copy of the sound recording itself is not made." *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 800 (6th Cir. 2005).

## C. Analysis

With this understanding of sound recording copyrights in mind, our infringement analysis in this case must center on whether, when producing AWAN, Kharbouch duplicated Richardson's digital recording of HPW or imitated HPW's musical content.

We agree with Richardson that HPW's beat, to the naked ear, seems indistinguishable from the beat in AWAN. Yet, opinions and allegations unsupported by facts are not enough to create a genuine factual dispute about whether AWAN duplicated HPW's digital track. And, as the district court properly concluded, Richardson failed to supply facts that

would permit a jury to find that his sound recording copyright was infringed.

As we explained earlier, Richardson could have presented either direct or indirect evidence to succeed in his claim that Kharbouch duplicated HPW in producing AWAN. *See Signature Constr.*, 994 F.3d at 887. Richardson has presented neither. As for direct evidence, Kharbouch does not admit to sampling HPW. *Cf. Bridgeport Music*, 410 F.3d at 800 (allowing infringement claim where the defendants admitted sampling the plaintiff's digital recording). And the record lacks any other evidence about how AWAN was produced. Despite having the opportunity to gather evidence probative of duplication by, for example, deposing Kharbouch, deposing the song's producer Rico Love, or presenting expert testimony suggesting that sampling occurred, Richardson failed to do so.

Richardson also failed to provide indirect evidence of infringement—that is, evidence that Kharbouch had access to HPW such that it is reasonable to infer that he had an opportunity to duplicate the track *and* evidence of substantial similarity between AWAN and HPW such that it is reasonable to infer that sampling actually occurred. *Signature Constr.*, 994 F.3d at 887. As to access, Richardson presents no facts about Kharbouch or Rico Love's retrieval of HPW's digital track beyond stating that he (Richardson) posted it on the internet. This does not permit an inference that AWAN's producers duplicated or sampled, as opposed to merely imitated, HPW. *See Lexington Homes*, 858 F.3d at 1108 ("[T]he existence of the plaintiff's copyrighted materials on the Internet, even on a public and 'user-friendly' site, cannot by itself justify an inference that the defendant accessed those materials."). And as to substantial similarity, although Richardson's expert witness

discussed the two tracks' similarities and the widespread use of sampling in the industry, he did not offer an opinion on AWAN's digital production. This expert testimony is unlike the expert testimony presented in cases like *VMG Salsoul, LLC v. Ciccone*, where the expert opined that the defendant directly copied and modified the copyrighted sound recording. 824 F.3d at 879.

In sum, the mere evidence Richardson provided of the two tracks' similarity is not enough to create a dispute of material fact as to whether AWAN is or contains a digital copy of HPW.

In so holding, we express no view on whether any amount of digital sampling, however slight, is sufficient to establish a claim for copyright infringement. *Compare Bridgeport Music*, 410 F.3d at 800–01 (holding that the reproduction of any amount of a sound recording is sufficient to prove infringement), *with VMG Salsoul*, 824 F.3d at 886–87 (requiring evidence that the defendant duplicated a substantial portion of the sound recording). We will not consider the issue where, as here, a plaintiff has not presented any evidence of digital sampling to begin with.

Accordingly, we affirm the district court's grant of summary judgment to Kharbouch on Richardson's copyright infringement claim. And because Richardson cannot succeed on the merits of his copyright infringement claims, we must also deny his request for a permanent injunction. *See Chathas v. Loc. 134 Int'l Bhd. of Elec. Workers*, 233 F.3d 508, 513 (7th Cir. 2000).

**IV**

The final issue for us to resolve is Kharbouch's request that we overturn the district court's denial of his motion for attorney's fees. We review denials of fee awards under the Copyright Act for abuse of discretion. *Live Face on Web, LLC v. Cremation Soc'y of Ill., Inc.*, 77 F.4th 630, 631 (7th Cir. 2023).

District courts have discretion under the Copyright Act to award fees to the prevailing party. 17 U.S.C. § 505. District courts consider the four non-exhaustive *Fogerty* factors when evaluating such requests: "(1) the frivolousness of the suit; (2) the losing party's motivation for bringing or defending against a suit; (3) the objective unreasonableness of the claims advanced by the losing party; and (4) the need to advance considerations of compensation and deterrence." *Live Face on Web*, 77 F.4th at 631 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

There is a strong presumption in favor of granting fees in copyright infringement cases. *Id.* at 632 ("[P]revailing defendants in copyright cases are presumptively entitled (and strongly so) to recover attorney fees." (quoting *Woodhaven Homes & Realty, Inc. v. Hotz*, 396 F.3d 822, 824 (7th Cir. 2005))). This is because, "[w]ithout an award of attorney's fees, a defendant faces pressure to abandon his meritorious defenses and throw in the towel because the cost of vindicating his right (his attorney's fees) will exceed the private benefit he receives from succeeding (a non-excludable right to continue doing what he has already done)." *Id.*

Nevertheless, "our caselaw has never held that the strong presumption was insurmountable; rather, we have consistently required a fact-specific, case-by-case inquiry" by the

district court to affirm a decision on appeal. *Timothy B. O'Brien LLC v. Knott*, 962 F.3d 348, 351 (7th Cir. 2020). The fees inquiry is, after all, a "fact-intensive" one, "and the district court's proximity to the litigation" provides it with a superior vantage point. *Live Face on Web*, 77 F.4th at 631. To that end, our court has affirmed the denial of fees in a case where the district court "properly performed a fact-specific analysis of the case and reached a reasonable conclusion." *Timothy B. O'Brien LLC*, 962 F.3d at 352.

Kharbouch, by his own admission, filed his request for fees late, by one day. Despite having the authority to deny the motion as untimely (as Richardson urged), the district court excused Kharbouch's tardiness and addressed the merits of his motion. The court then analyzed the *Fogerty* factors, concluded that each of them weighed against an award, and denied Kharbouch's motion.

As for the first three factors, the court found that Richardson's lawsuit was not frivolous, he did not have an improper motivation in filing it, and the claims were not objectively unreasonable. The court explained that Richardson's testimony demonstrated that he genuinely believed, after hearing AWAN, that the track copied HPW, and that he "failed to appreciate the technical differences between a sound recording and music composition copyright." Furthermore, the court found that Kharbouch's own failure to raise or develop the sound recording copyright argument in his initial motion for summary judgment undermined his argument that Richardson should have known that his suit was frivolous. As to the fourth *Fogerty* factor, the court found that a fee award, rather than encouraging defendants to pursue meritorious defenses,

would have awarded Kharbouch's lack of diligence and invited future defendants to do the same.

The district court did not abuse its discretion by denying Kharbouch's motion. The district court, which is closest to the factual record and the litigating parties, explicitly acknowledged the strong presumption in favor of fees and thoroughly explained why it concluded that the *Fogerty* factors disfavored an award in this case. Each of the court's conclusions as to the *Fogerty* factors was well supported by the record.

A denial of fees in this case also does not undermine the purpose of the Copyright Act's fee-shifting arrangement, the purpose of which is to "encourage parties to stand on their rights." *Live Face on Web*, 77 F.4th at 631. Despite alluding in passing to Richardson's sound recording copyright in his second reply brief at summary judgment, Kharbouch otherwise ignored a meritorious issue until the district court requested supplemental briefing sua sponte. It was the district court's assiduousness, not Kharbouch's diligent development of the record or his defense, that ensured the dispositive argument was addressed at summary judgment. Accordingly, the district court was within its discretion to find that granting Kharbouch fees would do little to encourage the exercise of rights or deter frivolous litigation.

In summary, in Richardson's appeal (24-1119), we AFFIRM the district court's grant of summary judgment in favor of Kharbouch, including its manner of enforcing the local rules during the parties' litigation, and DENY Richardson's request for injunctive relief. In Kharbouch's cross-appeal (24-2378), we AFFIRM the district court's denial of attorney's fees.